UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

UNITED STATES OF AMERICA,

   -v-                                              AFFIDAVIT

MICHAEL DEMOS                 DKT. NO. 15-cv-00132-CM

---------------------------------------------------------

Lawrence F. Ruggiero, an attorney duly admitted to practice law in this Court, being duly sworn, deposes and says:

1) I submit this affidavit in response to the claims Michael Demos made in his pending petition pursuant to 28 USC Section 2255. On July 13, 2012 I was assigned CJA counsel for Michael Demos in <u>U.S. v.Demos</u> 11 Cr. 353(CM) replacing Ms. Julia Gatto of the Federal Defenders who had represented him since his arrest on January 18, 2011. Demos was sentenced on December 19, 2013.

2) Demos does not present his alleged Grounds for vacating his conviction in the chronological order of their underlying events. For clarity, I will present the relevant events chronologically.

3) I respectfully submit that before and during my representation of Demos he engaged in conduct unrelated to my representation of

him which completely contradicts his claims that he was incapable of understanding the law and proceedings in his case. For example, he commenced and aggressively prosecuted a pro se civil state action against his prior lawyer, Federal Defender Ms. Julia Gatto. His action essentially alleged that Ms. Gatto was incompetent and breached her duty to him when she withdrew as his lawyer. I spoke to Demos about that action when I was advised of it by Ms. Gatto and concerned Federal Defenders representing her. From those conversations it became clear to me that Demos understands the law and legal procedures far better than the average person and it seemed he was vigorously pursuing this action against Ms. Gatto to delay his prosecution as well as to punish Ms. Gatto for bringing his inappropriate conduct to the attention of this Court in her motion to withdraw as his attorney. I eventually convinced Demos to withdraw his civil action against Ms. Gatto. However, he later threatened, but did not commence, a similar action against psychologist Elizabeth Owen who was conducting his Court-approved psychological evaluation in this case when he did not agree with her findings.

4) <u>**Grounds 2, 5 and 6: Demos's claims that I was ineffective for failing to investigate and thoroughly research and consider any and all possible defenses available to him; that I coerced him into involuntarily pleading guilty; that the district court erred by not ordering a competency hearing to determine he was competent; and that his guilty plea was not made knowingly, intelligently, or voluntarily because he was not medically capable of pleading guilty.**</u> Early in my representation of Demos, Ms. Gatto and he brought to my attention his history of physical and mental problems and drug abuse. I then applied for and received this Court's permission to have him examined by Elizabeth A. Owen, Phd., to determine whether he was competent to stand trial or whether he could assert an insanity defense. Doctor Owen's report was attached as Exhibit B to my sentencing submission for Demos. It describes several of Demos's mental and physical conditions for which he was being treated and concludes that he is sane and mentally competent. Therefore, I neither made motions nor asserted any defense based on incompetence or insanity but planned to bring

3

those conditions to the Court's attention as sentencing mitigation factors if he were convicted. Throughout my representation of Demos I monitored and frequently conferred with him and Dr. Owen about his mental and physical condition to insure I was communicating with him most effectively and to insure he clearly understood everything about his case. During our conversations Doctor Owen provided me with the descriptions Demos had given her of his case and it was clear form Demos's descriptions that he fully understood his case and all its consequences. Moreover, it was also a practice of my associate Richard Fiske and I, before engaging with Demos, to confirm with him that he had taken his medications and understood what was transpiring during our every communication, meeting, and court appearance. It was absolutely clear during our many interactions with Demos, and in his many follow-up emails relating to those interactions, that he was competent, sane, intelligent and fully understood every aspect and development in his case.

5) It was in this context of Demos being fully capable of understanding his case that he and I discussed the evidence

against him and any possible defenses. At first it was impossible to have such discussions with Demos because, as happened with Ms. Gatto, he simply would not show up for many scheduled meetings to discuss the evidence.  When he eventually was willing to discuss the case he initially claimed, also as he had with Ms. Gatto, that he was innocent of the charges against him and that the crimes with which he was charged were committed by his unavailable business and social partners who caused him to unknowingly participate in their crimes. When I confronted him with overwhelming evidence of his knowing participation in the crimes charged his position changed completely.  He then claimed that he knowingly participated in the crimes but was coerced to do so by these unavailable social and business partners, some of whom were deceased.  All attempts to locate and interview survivors failed. Demos further insisted that there existed, among the tens-of thousands of documents in his seized hard drives, exculpatory documentary evidence of his being coerced. Consequently, I spent months, and incurred substantial expense, searching those hard drives for such unidentified or unspecified

exculpatory evidence. I did so with the assistance of a private technology company I retained, along with Ms. Gatto and the Federal Defenders technical expert who had previously worked on Demos's hard drives. Those searches yielded no exculpatory material. I then reviewed and prepared a separate approximately thirty-page Excel analysis from the many thousands of discovery documents provided by the prosecutor. It grouped the overwhelming incriminating documentary evidence relating to each crime with which Demos was charged. Again, no exculpatory evidence was found. At my request the prosecutor then prepared and provided her own separate analysis of all the evidence for each charged crime. My paralegal, my associate, and I reviewed with Demos on several occasions my Excel analysis and the prosecutor's analysis along with the actual underlying documents after which Demos agreed the evidence against him was overwhelming. He admitted his guilt and abandoned his claim that he had defenses to the charges. He further admitted that the exculpatory material he had claimed existed did not exist. He decided to plead guilty when he eventually listened to several

discovery tape recordings, which he had previously refused to review, of his calls to ING Bank in which he explicitly and fraudulently tried to get credit by using a false identity he frequently used for such purposes on other occasions. He pleaded guilty on December 13, 2012. I met with Demos many times and we communicated over one hundred times by phone and email. Those contacts clearly established that he was keenly aware of the nature of the charges against him, and the evidence against him as well as the sentences he faced. He never demonstrated or indicated the slightest inability to understand every aspect of his case and its consequences. In fact he often discussed this case and his personal circumstances with me stating he was eager to end his criminal activities, accept the government's plea offer to avoid a possibly harsher trial conviction sentence, and extricate himself as soon as possible from the very destructive environment, lifestyle and associates which had led to his current situation.

6) <u>**GROUND 4- Demos claims that I was ineffective for failing to make objections to the presentence report.**</u>

My associate and I provided Demos with a copy of his presentence report and we reviewed it with him many times. Demos and I also had extensive telephone and email communications regarding the report and I made all the relevant objections Demos had to the report. Those objections are attached. The "objections" which he claims were not made were not presentence report objections. They were sentencing mitigation arguments essentially claiming that he had mental and physical problems which others exploited to encourage and facilitate his criminal activities. To the extent those arguments could be corroborated I made them and other possible mitigating circumstances in my sentencing submission and at sentencing.

7) **GROUND 3- Demos claims I was ineffective for failing to file a notice of appeal.**

Demos and I reviewed and discussed the guilty plea agreement several times including its waiver of appeal and waiver of collateral attack. He understood those waivers and all the other terms of that agreement. He also understood my explanations of those circumstances in which a sentence could be appealed despite

those plea agreement waiver provisions. Minutes after Demos's sentencing he and I again discussed the issue of an appeal of his conviction and sentence. I advised him that there was no appealable issue. Demos agreed and expressed his complete satisfaction with my representation of him. In fact, neither before nor after Demos was sentenced did he ever express or indicate any interest in appealing his sentence or conviction. Moreover, in preparing this affidavit I reviewed the many post-sentencing emails I received from Demos hours after his sentencing and for weeks thereafter. In those emails and in my several post-sentencing conversations with Demos he never expressed, implied or even indicated that he wanted to appeal his sentence or collaterally attack his conviction.

*Lawrence F. Ruggiero*

Lawrence F. Ruggiero

Sworn to before me on
the 8th day of July, 2015

_____

JULIE P. LOCKHART
Notary Public - State of Florida
My Comm. Expires Aug 14, 2018
Commission # FF 151100
Bonded Through National Notary Assn.

9

Notary Public

Notary Public